EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Juan  Flores Berger, Miriam Jiménez Román y la Sociedad Legal de Gananciales por ambos compuesta<br><br>Peticionarios<br><br>vs.<br><br>Lillybeth Colberg y otros<br><br>Recurridos | Certiorari<br><br>2008 TSPR 90<br><br>174 DPR \_\_\_\_ |

Número del Caso: CC-2006-940

Fecha: 20 de mayo de 2008

Tribunal de Apelaciones:

        Región Judicial de Mayagüez

Juez Ponente:

        Hon. Jocelyn López Vilanova

Abogado de la Parte Peticionaria:

        Lcdo. Gabriel García Maya

Abogada de la Parte Recurrida:

        Lcda. Evelyn Benvenutti Toro

Materia: Estorbo Público

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan Flores Berger, Miriam
Jiménez Román y la Sociedad
Legal de Gananciales por ambos
compuesta

     Peticionarios

        v.

Lillybeth Colberg y otros

     Recurridos

CC-2006-940

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 20 de mayo de 2008

Hoy nos corresponde atender una petición de *injunction* permanente en una acción de estorbo público al amparo del artículo 277 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2761.

## I.

No existe controversia en torno al hecho que la señora Lillybeth Colberg (señora Colberg), mantiene en su propiedad, cincuenta y ocho (58) perros y treinta (30) gatos. Ante ello, el señor Juan Flores Berger y su esposa, la señora Miriam Jiménez Román (esposos Flores-Jiménez), quienes son dueños de una propiedad colindante a la residencia de la señora Colberg, iniciaron una serie de trámites ante el

Departamento de Salud dirigidos a remover los animales de la propiedad de la señora Colberg. Posteriormente, recurrieron al foro judicial mediante una demanda de *injunction* para obtener el cese de un estrobo público.

Según revelan los documentos que obran en autos y los hechos que el Tribunal de Primera Instancia encontró probados, en el mes de junio de 2004, el señor Flores Berger presentó una querella ante la Oficina de Salud Ambiental del Distrito de San Germán, en la cual alegó que la señora Colberg mantenía un gran número de perros en su residencia. Ante dicha querella, los señores Edwin Alvarado Torres (señor Alvarado Torres), Inspector de Salud Ambiental y Ramón Medina Galindo, supervisor de distrito de la Oficina de Salud Ambiental (señor Medina Galindo), acudieron en varias ocasiones a inspeccionar la residencia de la señora Colberg. Conforme a la prueba que obra en autos y según demuestra el testimonio del señor Medina Galindo, luego de las visitas realizadas por los inspectores de Salud Ambiental, se le cursó notificación a la señora Colberg para que reubicara los perros que mantenía en su residencia debido a alegadas violaciones al Reglamento general de salud ambiental, núm. 6090 (Reglamento de salud ambiental). Véase apéndice del recurso de *certiorari,* pág. 63 y la Trascripción de la Prueba, apéndice del recurso de *certiorari*, págs. 111-12.

Por otro lado, en el mes de enero de 2005 se presentó una denuncia ante el Tribunal de Primera Instancia por

violaciones al Reglamento de salud ambiental. *Véase,* Trascripción de la prueba, apéndice del recurso de *certiorari,* págs. 113; 156. Dicho procedimiento judicial se instó al amparo de la Ley sobre Controversias y estados provisionales de derecho, Ley núm. 140 del 23 de julio de 1974, 32 L.P.R.A. secs. 2871-2877. Sin embargo, el tribunal archivó dicho proceso y se refirió al trámite administrativo ante el Departamento de Salud. *Véase,* Trascripción de la prueba, apéndice del recurso de *certiorari,* pág. 113. Tras dicha determinación judicial, el señor Medina Galindo suscribió una misiva con fecha del 17 de marzo de 2005, mediante la cual le solicitó a la representante legal de la señora Colberg cierta documentación sobre los permisos necesarios para operar un albergue de animales. Apéndice del recurso de *certiorari,* págs. 44-45.[1]

Así las cosas, el 22 de junio de 2005, los esposos Flores-Jiménez presentaron una demanda de *injunction* en contra de la señora Colberg. En su demanda, invocaron las disposiciones del artículo 277 del Código de Enjuiciamiento Civil e indicaron que la señora Colberg mantiene una gran cantidad de perros y gatos que constituyen un estorbo a su propiedad y a la propiedad pública, y que dicha tenencia de animales les ha privado del uso y disfrute de su propiedad

---

[1] A dicha misiva, la licenciada Evelyn Benvenutti Toro, representante legal de la señora Colberg, respondió que esta última no operaba un albergue de animales y que además mantenía su residencia limpia, libre de malos olores y que los perros no emitían ruidos excesivos entre las 6:00 de la tarde y las 6:00 de la mañana.

debido a los ladridos constantes de noche y de día, malos olores y amenazas de ataques. Además, los demandantes-peticionarios alegaron que habían recabado sin éxito la intervención de las autoridades públicas de sanidad, por lo que era necesario recurrir al foro judicial para detener el daño causado por el estorbo que la señora Colberg alegadamente mantiene en su hogar.

Oportunamente, la señora Colberg contestó la demanda y presentó reconvención. Luego de celebrar una vista sobre *injunction* permanente que se extendió por varios días, el Tribunal de Primera Instancia dictó sentencia el 5 de agosto de 2005. En su dictamen, declaró con lugar la demanda y ordenó a la señora Colberg a desalojar los animales de su propiedad en un término de noventa (90) días. También le ordenó pagar la cantidad de $5,000.000 a cada demandante como compensación por los daños sufridos y le impuso el pago de $2,500.00 por concepto de honorarios de abogado.

La esencia de la determinación del foro primario fue que la señora Colberg mantiene "una cantidad irrazonable de perros y gatos los cuales con sus ruidos y malos olores impiden que los demandantes disfruten tranquilamente de su hogar". Apéndice del recurso de *certiorari,* pág. 36. Por tanto, concluyó que los demandantes-peticionarios tenían derecho al cese permanente de dicha perturbación. Además, el tribunal indicó que, transcurrido un año de presentada la querella sin que el Departamento de Salud realizara la

vista administrativa, el proceso administrativo resultaba ineficaz, por lo que el procedimiento de *injunction* era la única vía que los demandantes-peticionarios tenían disponible.

Inconforme, la señora Colberg recurrió al Tribunal de Apelaciones. Dicho foro apelativo intermedio revocó la sentencia del Tribunal de Primera Instancia y devolvió el caso al foro administrativo para que continuaran los procedimientos de rigor.

Oportunamente, los esposos Flores-Jiménez recurrieron a este Tribunal mediante recurso de *certiorari.* Aducen que erró el Tribunal de Apelaciones al revocar el *injunction* permanente emitido por el tribunal de instancia bajo el fundamento de agotamiento de remedios administrativos. Arguyen además, que el recurso de *injunction* para abatir un estorbo público no requiere agotamiento de remedios administrativos y que antes de presentar su demanda, le proveyeron al Departamento de Salud amplia oportunidad para intervenir en el caso. En segundo lugar, indican que procede confirmar el *injunction* decretado por el tribunal de instancia, pues la prueba presentada en las vistas estableció que la señora Colberg tiene una situación descontrolada en su residencia que ocasiona malos olores, ruidos, la presencia de moscas y el riesgo de enfermedades que menoscaban la tranquilidad de su hogar y del vecindario.

El 12 de enero de 2007, expedimos el auto. Contando con la comparecencia de las partes, procedemos a resolver.

**II.**

Como asunto prioritario, debemos examinar si los demandantes-peticionarios tenían que agotar remedios administrativos como antesala a solicitar un *injunction* bajo las disposiciones del Artículo 277 del Código de Enjuiciamiento Civil sobre estorbo público.

Comenzamos este análisis indicando que no tienen razón los peticionarios al argumentar que el Tribunal de Apelaciones erró al atender el asunto de agotamiento de remedios ante el hecho que la señora Colberg no lo levantó como error ante dicho foro apelativo intermedio. Independientemente de los méritos de la determinación del tribunal apelativo intermedio en cuanto al agotamiento de remedios administrativos, debemos recordar que un "tribunal apelativo tiene la facultad inherente de considerar y resolver errores patentes que surjan de un recurso aun cuando éstos no hayan sido presentados por las partes". *Hernández v. Espinosa,* 145 D.P.R. 248, 264 (1998). *Véanse además, Hons. Castro, Cabán v. Depto. de Justicia*, 153 D.P.R. 302, 312 (2001); *Ab Intestato Marini Pabón*, 107 D.P.R. 433, 439-40 (1978). En armonía con esta normativa, el Tribunal de Apelaciones podía entrar a considerar si en este caso procedía requerir que las partes agotaran los remedios administrativos ante el Departamento de Salud, máxime cuando de la trascripción de la vista y de la

sentencia del tribunal de instancia surge que se realizaron ciertos trámites iniciales ante dicha agencia.

Aclarado lo anterior, procedemos a examinar la normativa sobre agotamiento de remedios administrativos.

### III.

La doctrina de agotamiento de remedios administrativos es una norma de auto-limitación judicial que en varias ocasiones hemos interpretado y aplicado. En esencia, esta doctrina determina la etapa en que un tribunal de justicia debe intervenir en una controversia que se ha presentado inicialmente ante un foro administrativo. *Asoc. Pesc. Pta. Figueras v. Pto. Del Rey,* 155 D.P.R. 906, 916-17 (2001); *Mun. de Caguas v. AT&T*, 154 D.P.R. 401, 407 (2001). Cuando es de aplicación, requiere que los tribunales se abstengan de intervenir hasta tanto la agencia atienda el asunto. Por tanto, usualmente se invoca el agotamiento cuando una parte ante el foro administrativo solicita la intervención judicial previo a consumar el procedimiento administrativo. *Mun. de Caguas v. AT&T*, *supra*. *Véanse además, Guzmán y otros v. E.L.A.,* 156 D.P.R. 693, 712 (2002); *Ortiz v. Panel F.E.I.,* 155 D.P.R. 219, 241 (2001).

No obstante la utilidad de esta doctrina que sin duda fomenta que las agencias utilicen y apliquen su conocimiento especializado, hemos clarificado que la exigencia de agotamiento de remedios no es un principio de aplicación inexorable. En virtud de ello, la Ley de procedimiento administrativo uniforme dispone, entre otros

supuestos, que se podrá eximir a una parte de agotar remedios ante la agencia, cuando el remedio administrativo sea inadecuado; cuando requerir el agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios; o cuando sea inútil agotar los remedios administrativos por la dilación excesiva de los procedimientos. Sección. 4.3, Ley núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. sec. 2173. *Véanse además, Guzmán y otros v. E.L.A., supra,* pág. 714; *Asoc. Pesc. Pta. Figueras v. Pto. Del Rey*, *supra*, pág. 917.

Cónsono con estas excepciones al requisito de agotamiento de remedios, hemos expresado que cuando "el agravio sea uno de 'patente intensidad al derecho del individuo que reclame urgente reparación', se puede utilizar el injunction para eludir el cauce administrativo". *Rivera v. E.L.A.* 121 D.P.R. 582, 596 (1988) (citas omitidas). De igual modo, hemos enfatizado que para preterir el requisito de agotamiento "[n]o basta… con que los remedios administrativos sean lentos…. *Se requiere también que éstos constituyan una gestión inútil e inefectiva o que produzcan un daño irreparable*". *Guadalupe v. Saldaña, Pres. U.P.R.,* 133 D.P.R. 42, 50 (1993).

**IV.**

Al ordenar el agotamiento de remedios, el Tribunal de Apelaciones indicó que los peticionarios no le dieron una oportunidad adecuada al Departamento de Salud para atender

su reclamo, pues al momento de presentar la demanda de *injunction*, los inspectores de la agencia estaban recopilando información. El tribunal fundamentó su determinación en el hecho que el Departamento de Salud tiene la facultad en ley para entrar a una casa y "hacer remover o corregir con urgencia cualquier daño o estorbo público en la forma y modo prescritos en los reglamentos de sanidad", Art. 30, Ley núm. 81 del 14 de marzo de 1912, 3 L.P.R.A. sec. 181.

No hay duda de que el Secretario de Salud tiene la facultad delegada de atender asuntos de salud y sanidad pública, 3 L.P.R.A. sec. 171, y que en aras de ejercer dicha responsabilidad puede ordenar la remoción de un estorbo público, imponer multas, 3 L.P.R.A. sec. 181, o remover el estorbo si el dueño, agente o inquilino de la propiedad no lo hace en un plazo razonable, 3 L.P.R.A. sec. 182. Sin embargo, la dilación del Departamento de Salud en tramitar y finiquitar la querella presentada por los esposos Flores-Jiménez, demuestra que el procedimiento administrativo en este caso advino inútil e ineficaz, pues no proveyó un remedio oportuno, expedito y adecuado a los peticionarios.

Al recurrir al trámite administrativo ante el Departamento de Salud, los esposos Flores-Jiménez pretendían que dicha agencia lidiara con una situación que ellos consideraban amenazaba la salud pública. En el mes de junio de 2004, los oficiales del Departamento realizaron

varias inspecciones de la propiedad y se comunicaron con la señora Colberg para resolver la situación de la cantidad de perros que ella mantiene en su residencia. Además, con el aval del Departamento de Salud, se inició un proceso judicial al amparo de la Ley sobre controversias y estados provisionales de derecho en el cual se acordó tramitar el reclamo de los aquí peticionarios ante el Departamento de Salud. Sin embargo, transcurrido un año de presentada la querella ante el Departamento de Salud, nunca se tramitó un procedimiento para ordenar la remoción del alegado estorbo y tampoco se completó el procedimiento ante dicha agencia al amparo del Reglamento del Secretario de Salud para regular los procedimientos adjudicativos en el Departamento de Salud, Reglamento Núm. 5467. *Véase* trascripción de la prueba, apéndice del recurso de *certiorari*, págs. 132-35; 172.

Ante dicho cuadro de dilación en el procedimiento administrativo, es ineludible concluir que en el presente caso no se justifica requerir agotar un remedio administrativo que se revela ineficaz e inadecuado. De igual modo, pesa sobre nuestra decisión el hecho que estamos ante un reclamo de existencia de un daño sustancial e inminente a los intereses de los peticionarios y del público en general que aumenta tras la dilación de la agencia. Adviértase que se trata de una alegación de daño a la salud colectiva y a la tranquilidad de un vecindario. Por tanto, el balance de conveniencias se inclina a

prescindir de agotar los procedimientos ante el Departamento de Salud, para así finiquitar una controversia que involucra la salud pública.

Habiendo establecido que no procede aplicar en este caso la doctrina de agotamiento de remedios administrativos, entramos a examinar si en efecto nos encontramos ante un estorbo público que requiere, como dictaminó el Tribunal de Primera Instancia, la concesión de un *injunction* permanente.

**V.**

En su artículo 277, el Código de Enjuiciamiento Civil le concede a "toda persona, agencia pública o municipio **cuyos bienes hubieren sido perjudicados o cuyo bienestar personal resulte menoscabado**" por un estorbo público, la facultad de promover una acción para obtener el cese de un estorbo público.  32 L.P.R.A. sec. 2761 (énfasis nuestro). Además, provee para la concesión de una compensación por los perjuicios que el promovente de la acción sufra por el estorbo.  Un estorbo, a su vez, es

> [t]odo lo que fuere perjudicial a la salud, indecente u ofensivo a los sentidos, o que interrumpa el libre uso de la propiedad, de modo que impida el cómodo goce de la vida o de los bienes, o que estorbare el bienestar de todo un vecindario, o un gran número de personas o que ilegalmente obstruyere el libre tránsito, en la forma acostumbrada, por cualquier lago, río, bahía, corriente, canal o cuenca navegable, o por cualquier parque, plaza, calle, carretera pública y otras análogas.

*Id.*

Como se observa, el artículo 277 no sólo contempla que el Estado inicie una acción de estorbo público, sino que

autoriza a los particulares a proseguir una acción de estorbo público. En estos últimos casos, se requiere que la persona haya sufrido un perjuicio en sus bienes o un menoscabo en su bienestar personal. *Marín v. Herrera,* 61 D.P.R. 646 (1943); *Estela v. Mario Mercado e Hijos,* 44 D.P.R. 563 (1933). De esta forma, el reclamante debe alegar y probar la existencia de un perjuicio especial.

Por otro lado, la disposición estatutaria sobre estorbo público autoriza la concesión de un *injunction* permanente y el resarcimiento de los daños ocasionados. Es decir, la acción de estorbo público tiene dos fines preeminentes: "reducir la perturbación hasta el punto que sea compatible con el cómodo disfrute de la propiedad y 2) compensar los daños ocasionados…". *Casiano Sales v. Lozada Torres*, 91 D.P.R. 488 (1964). *Véanse además, Ortega Cabrera v. Tribunal Superior*, 101 D.P.R. 612, 617 (1973); *Fuentes v. Gulf,* 91 D.P.R. 559, 565 (1964).

En el pasado, hemos aplicado esta disposición estatutaria para abatir diversas perturbaciones que interfieren con el libre disfrute de la propiedad y que amenazan la salud pública. Así, por ejemplo, hemos eliminado o controlado ruidos, emanaciones de humos y gases, malos olores y derrames de aguas sucias. *Véanse, Figueroa Velázquez v. A.A.A.,* 99 D.P.R. 105 (1970); *Fuentes v. Gulf, supra; Casiano Sales v. Lozada Torres, supra; Arcelay v. Sánchez,* 77 D.P.R. 824 (1955).

Además, hemos enfatizado lo delicado de la función judicial de adjudicación en estos casos. La contraposición del interés al libre disfrute de la propiedad, frente al interés en la salud y seguridad públicas, exige el más delicado análisis de los derechos y las responsabilidades de las partes a los fines de armonizarlos en la medida posible. Es decir, en este balance es esencial tomar en cuenta los intereses de las partes en disfrutar libremente de su propiedad sin cargas irrazonables sobre el mismo. *Véase Arcelay v. Sánchez, supra*, pág. 832. En virtud de ello, es "fundamental… resolver… si el uso que hace una persona de su propiedad, es o no razonable, tomando en cuenta el derecho de la otra a disfrutar la propiedad que es suya". *Id*, pág. 833.

La medida de lo razonable en estos casos depende entonces de una serie de factores que los tribunales deben tomar en cuenta a la luz de los hechos sobre los cuales se fundamenta el reclamo. Aun cuando no existe una ecuación inmutable, hemos identificado una serie de criterios a considerar. Por ejemplo, el lugar en el que ocurre la actividad impugnada, la naturaleza, extensión, utilidad y el valor del uso, el carácter del daño alegadamente sufrido y la naturaleza del derecho o del uso afectado por el alegado estorbo. *Véase Id.*

De igual modo, es de fundamental importancia que los tribunales adopten un remedio adecuado para abatir el estorbo sin imponerle restricciones irrazonables a la parte

promovida. Ante el hecho que en casos como el que nos ocupa, se enfrentan los intereses de dos personas de disfrutar de su propiedad, en nuestros pronunciamientos hemos procurado adoptar remedios judiciales que propendan a eliminar o aminorar una perturbación, siendo conscientes de que el disfrute a la propiedad puede conllevar intromisiones moderadas y razonables.

Así, por ejemplo, en *Arcelay v. Sánchez, supra*, validamos las medidas adoptadas por el tribunal sentenciador para controlar la explotación de una planta de pasteurización y venta de leche en una zona primordialmente residencial. Consideramos que la forma en que se explotaba dicha industria constituía un estorbo a la parte allí demandante, por lo que entendimos adecuado permitir su funcionamiento, sujeto a ciertas medidas en torno al horario de trabajo y a que se realizaran cambios en la maquinaria y equipo para evitar daños al vecindario. En modo análogo, validamos en *Casiano Sales v. Lozada Torres, supra,* una sentencia que limitó las operaciones de una fábrica de construcción de ventanas y puertas de metal para aminorar el impacto de dicha industria en el disfrute de la propiedad de los allí demandantes.[2]

Finalmente, en *Figueroa Velázquez v. A.A.A., supra*, determinamos que la orden del foro primario para remover una bomba de alcantarillado en una urbanización por su

---

[2] Como medida adicional, ordenamos a los demandados elevar la chimenea de su fábrica para evitar la circulación de sustancias nocivas en la propiedad de los demandantes.

cercanía a la residencia de los demandados, fue sumamente drástica. También expresamos que "la sentencia de *injunction* debió limitarse a ordenar a la demandada para que en un término razonable realice las obras o reformas razonables y adecuadas para eliminar o aminorar la perturbación…". *Id.,* pág. 112.

En resumen, nuestros pronunciamientos revelan que en casos como el que nos ocupa, el hecho de que proceda remover un estorbo no conlleva en toda ocasión la supresión absoluta de la actividad o el uso impugnado. Los tribunales por tanto, pueden optar por tomar medidas específicas para eliminar las causas de la perturbación sin prohibir absolutamente la conducta del demandado. *Véase además* H. A. Colón Cruz, *Notas sobre recursos extraordinarios, certiorari, injunction, mandamus,* 42 Rev. Col. Abogs., 445, 453 (1981).

## VI.

En el presente caso, los esposos Flores-Jiménez invocaron las disposiciones del artículo 277 del Código de Enjuiciamiento Civil para abatir los ruidos, malos olores y riesgos de enfermedades, alegadamente creados por los animales de la señora Colberg. Estamos, por tanto, ante el ejercicio de la acción de estorbo público por personas privadas. Debemos examinar entonces si existe una perturbación en los intereses de los peticionarios que configure un daño especial a ellos, digno de protección judicial. De igual modo, corresponde evaluar si la orden

dictada por el tribunal de instancia, disponiendo que la señora Colberg deberá remover todos sus animales y condenándola al pago de $10,000.00 en daños, es adecuada y razonable.

**A.**

Surge de la prueba desfilada ante el Tribunal de Primera Instancia, que los esposos Flores-Jiménez residen en la ciudad de Nueva York y mantienen una propiedad en el Municipio de Cabo Rojo, la cual visitan entre 4 y 8 veces al año. En general, se quejan de que no pueden disfrutar tranquilamente de su residencia, debido a los ruidos que los animales de la señora Colberg emiten y a los malos olores que éstos producen.

En la vista celebrada en el presente caso, el señor Flores Berger testificó que escucha constantemente los ladridos de los perros, que en su patio está expuesto a ello, por lo que no puede salir a pensar, escribir o conversar con amigos. También indicó que a pesar de que la señora Colberg encierra los perros de noche, él los escucha ladrando. En cuanto a los malos olores, reconoció que el olor no se percibe todo el tiempo, pero que cuando sopla el viento, es bien desagradable. *Apéndice del recurso de certiorari,* pág. 201. Finalmente, el señor Flores Berger testificó que entran muchas moscas a su hogar. Aunque manifestó no estar seguro de dónde provienen, entiende que son producto de los malos olores de la casa de la señora Colberg. *Id.,* pág. 203. Por su parte, la señora Jiménez

Román testificó que los perros ladran por muchas horas y que percibe el olor a excreta y a "perro mojado" en una esquina de su patio.

A los fines de sostener sus alegaciones, los esposos Flores-Jiménez también presentaron el testimonio del señor José Manuel Irizarry, amigo de éstos y quien visita la residencia esporádicamente. Éste testificó que en una ocasión los perros ladraron por veinte (20) minutos; que los ladridos son altos, aunque en la parte de atrás de la casa se oyen menos; y que cuando el viento sopla, se percibe el mal olor en el balcón.

En segundo lugar, los oficiales del Departamento de Salud, los señores Medina Galindo y Alvarado Torres, testificaron que cuando visitaron la propiedad de la demandada-recurrida, ella se encontraba limpiando el patio. Sin embargo, observaron montículos de excreta en algunas áreas e identificaron la presencia de moscas en el área de los recipientes de alimentos y donde la señora Colberg deposita los excrementos de los animales. Además, el inspector Alvarado Torres indicó que pudo percibir el mal olor.

En apoyo a su reclamo sobre los ruidos que los animales emiten, los demandantes-peticionarios presentaron el testimonio del ingeniero Carlos Rosado, a quien contrataron para realizar un estudio de ruido. Su testimonio y su informe pericial, reflejaron que en los puntos de muestreo escogidos en la colindancia de las

propiedades de las partes aquí en litigio, se registraron sonidos por encima de los permitidos por el Reglamento para el control de la contaminación por ruidos de la Junta de Calidad Ambiental, Reg. Núm. 3418. Según el perito, la fuente emisora de los sonidos fue la residencia de la señora Colberg. A raíz de ello, el ingeniero concluyó que los sonidos causan molestias e intranquilidad.

No empece a estas conclusiones, el ingeniero reconoció que el Reglamento de Ruidos de la Junta de Calidad Ambiental excluye los ruidos de animales. Sobre ello, el tribunal de instancia determinó que aun cuando el reglamento no rige los niveles de ruido de animales, se podía recurrir al mismo a modo comparativo y a partir de ello, concluyó que el ruido en este caso afectaba la salud y la seguridad de los humanos.

Junto a la prueba antes detallada, el tribunal de instancia también contó con el testimonio del señor Carlos Ortiz, vecino de la señora Colberg y cuya propiedad colinda por el lado norte con la de ésta. El señor Ortiz indicó que en muy pocas ocasiones siente el mal olor, aunque reconoció que se percibe mayormente cuando llueve. Indicó además, que por lo general no siente el ladrido de los perros, más reconoció que en ocasiones ladran cuando pasan personas u animales por el lugar. Otra vecina del lugar, la señora Giselle López Robles, testificó a favor de la parte demandada, pero admitió que los perros a veces ladran.

Por su parte, la señora Colberg testificó que ha invertido más de $26,000.00 para complacer a los demandantes, que cambió las ventanas y las puertas de la casa, e indicó que en una época mantenía los perros encerrados de 7 de la noche a 7 de la mañana. Como alternativa, solicitó se le permita construir un muro que elimine los sonidos. Finalmente, la señora Colberg presentó los testimonios de sus hijos, el licenciado Gualberto del Toro y el doctor Rodolfo del Toro. Ambos testificaron que la señora Colberg mantiene la casa bien limpia.

Por otro lado, es menester resaltar que el lugar en el que se encuentra la residencia de la señora Colberg está clasificado como un Distrito Turístico Selectivo y en dicho distrito se permite la crianza de animales. Sec. 60.00, Reglamento de zonificación de Puerto Rico, Reglamento Núm. 4 de Planificación. Además, la prueba vertida en el juicio, incluyendo las fotografías del lugar que obran en autos, demuestran que al momento del juicio existían unas cuantas residencias, algunos solares vacíos y se estaban construyendo unos apartamentos. Finalmente, en el lugar se pueden encontrar animales como caballos y vacas. Así, es menester tomar en cuenta que la prueba que obra en autos demuestra que nos encontramos ante un área semi-rural en la que predomina el uso residencial.

Tomando en consideración toda la prueba antes detallada, el Tribunal de Primera Instancia determinó que

la señora Colberg mantiene un estorbo público que se debe remover en su totalidad. En especial, concluyó que los demandantes no pueden salir a su patio ni balcón porque los perros comienzan a ladrar y se percibe mal olor, que la cantidad de perros trasciende lo razonable, que los niveles de ruido durante los ladridos son en exceso del límite aceptable al oído humano, que cuando sopla el viento el olor es insoportable y que la gran cantidad de perros no permite un buen control de limpieza.

Coincidimos con la conclusión del Tribunal de Primera Instancia, a los efectos de que los animales de la señora Colberg —los cincuenta y ocho (58) perros y treinta (30) gatos – causan ruidos y malos olores que afectan a los peticionarios en el disfrute de su hogar, y que representan un estorbo público. Tal y como concluyó el Tribunal de Primera Instancia, los demandantes-peticionarios lograron establecer la existencia de una perturbación a la salud y el bienestar público que a su vez les afecta a ellos de forma particular, puesto que los ruidos de los perros les molestan de noche y los malos olores perturban el cabal disfrute de su propiedad. Además, la presencia de excrementos y de recipientes con alimentos y deshechos de los animales, configura una situación lesiva a la higiene. Ello, en contravención al Reglamento de salud ambiental, el cual dispone en su artículo IV, secs. 1 y 10, que el dueño de una casa deberá mantener los patios y alrededores en estricta limpieza, libres de deshechos de animales y que

los lugares en los que se encuentren animales domésticos deberán mantenerse limpios.

No obstante lo anterior, entendemos que la determinación de ordenar la remoción de todos los animales es excesiva y drástica, pues el tribunal no examinó la magnitud de la perturbación, no consideró alternativas para aminorarla y tampoco le confirió la debida importancia que tienen las gestiones que la señora Colberg ha realizado para evitar las molestias que sus animales puedan causar. Veamos.

En primer término, aun cuando la prueba testifical y pericial[3] que se desfiló en el juicio demuestra que los cincuenta y ocho (58) perros ladran de noche y de día y que los ladridos se pueden percibir en la residencia de los demandantes-peticionarios, es menester conferirle importancia al hecho que algunos vecinos testificaron que éstos no les molestan en sus hogares. *Véase* por ejemplo, testimonio del señor Carlos Ortiz, apéndice del recurso de *certiorari,* págs. 225-26.

---

[3] En su informe, el perito ingeniero comparó los niveles de ruido registrados en la colindancia entre las propiedades de las partes en litigio, con los límites de niveles de sonido recogidos en el Reglamento para el control de la contaminación por ruidos de la Junta de Calidad Ambiental, Reg. Núm. 3418. Sin embargo, los niveles máximos de sonido contenidos en dicho Reglamento, excluyen los sonidos causados por animales. No empece a ello, entendemos que los hallazgos del perito y su testimonio establecieron que los perros ladran de noche y de día y que nos permiten concluir, a la luz de toda la prueba desfilada, que sus ladridos se escuchan en la propiedad de los esposos Flores-Jiménez.

De otra parte, no podemos minimizar el hecho que, a pesar de que en el lugar se puede percibir un mal olor a perro y que se observan moscas, la prueba también estableció que la señora Colberg mantiene su hogar limpio, que recoge constantemente los excrementos de los perros y que el olor se percibe particularmente cuando llueve. Por tanto, aun cuando podemos concluir que los demandantes-peticionarios perciben malos olores en ciertas partes de su casa, dependiendo del día y de cómo sopla el viento, no podemos estar de acuerdo con la conclusión del tribunal de instancia, de que el olor es de tal magnitud que justifique remover todos los animales.

Finalmente, no existe prueba en el récord que indique que los demandantes-peticionarios han sufrido enfermedades por causa de los animales, ni que éstos amenacen la seguridad de los peticionarios o del vecindario. Obra en autos prueba de que los perros están esterilizados y que para el mes de julio de 2005, estaban vacunados. Apéndice del recurso de *certiorari,* pág. 73. Además, no se controvirtió el hecho que la señora Colberg mantiene los animales en la primera planta de su propiedad y en el patio, por lo que permanecen encerrados.

A la luz de lo anterior, y luego de sopesar el interés de los esposos Flores-Jiménez de disfrutar de su propiedad sin ruidos y malos olores, frente al interés de la señora Colberg de mantener a sus mascotas en su residencia, **no procede ordenar la remoción de todos los animales.** Al

igual que determinó el foro primario, es indudable que las condiciones actuales en las que la señora Colberg mantiene cincuenta y ocho (58) perros y treinta (30) gatos, son irrazonables. Sin embargo, debemos proveer un remedio que le permita mantener un número razonable de animales que no interfiera indebidamente con el derecho de los esposos Flores-Jiménez al cómodo disfrute de su propiedad. Ello, sobre todo, ante el hecho que algunos vecinos cercanos de la señora Colberg no objetan la presencia de los perros.

Al determinar que procede conceder un remedio menos drástico al decretado por el Tribunal de Primera Instancia, también tomamos en consideración que la señora Colberg ha remodelado su casa para encerrar a los animales y evitar los ruidos. Además, ella testificó que está dispuesta a construir un muro que minimice los sonidos y presentó el testimonio de su hermano, el Ingeniero Gustavo Colberg, quien habló sobre la posibilidad de construir un muro de 10 pies a prueba de sonido. Consideramos entonces, que el Tribunal de Primera Instancia debió evaluar esta opción, antes de escoger el remedio drástico que aplicó. De igual modo, debió explorar tanto la posibilidad de limitar la cantidad de perros y gatos que la señora Colberg pueda tener en el lugar a la luz de las características del mismo, como la alternativa de limitar el horario en el que los perros pueden estar en el patio, tomando en cuenta los días o épocas del año en que los demandantes-peticionarios visitan su propiedad.

En vista de que las alternativas antes expuestas podrían eliminar o minimizar sustancialmente los ruidos de los perros y los malos olores, el Tribunal de Primera Instancia debe estructurar un remedio que garantice los derechos de todas las partes involucradas y que elimine o minimice sustancialmente el estorbo.

Procedemos entonces, a pasar juicio sobre la partida de daños que el tribunal de instancia concedió a los demandantes-peticionarios y sobre la imposición de honorarios de abogados.

**B.**

Según establecimos, la causa de acción para abatir un estorbo público le permite al tribunal eliminar o aminorar la perturbación y confiere además la potestad de conceder una partida por concepto de los daños sufridos. Sobre el tipo de daño compensable en estos casos, hemos aclarado que el daño debe ser verdadero y perceptible a los sentidos, puesto que no existe un remedio cuando se trate de una ligera inconveniencia o pequeña incomodidad. *Casiano Sales v. Lozada Torres, supra,* pág. 498. *Véase además, Arcelay v. Sánchez, supra,* págs. 832-33. La magnitud del daño entonces, incide en el monto que se deba otorgar como compensación monetaria. *Casiano Sales v. Lozada Torres, supra.*

De otra parte, en diversas ocasiones hemos reiterado que los tribunales apelativos no deben intervenir con la estimación de los daños que los tribunales de instancia

realicen, salvo cuando la cuantía concedida advenga ridículamente baja o exageradamente alta. *Nieves Cruz v. U.P.R.,* 151 D.P.R. 150, 170 (2000). Esta norma a su vez, está predicada en el hecho que la valorización de los daños está sujeta a un cierto grado de especulación y conlleva "elementos subjetivos tales como la discreción y el sentido de justicia y conciencia humana del juzgador de los hechos". *S.L.G. Rodríguez v. Nationwide,* 156 D.P.R. 614, 622 (2002).

Conforme a esta normativa, al modificar una cuantía, es menester tomar en cuenta la discreción de los tribunales de instancia al aquilatar la prueba presentada en torno a los daños. No obstante la cautela que debe permear la revisión de una cuantía de daños, ello no nos impide intervenir con la discreción del foro primario en instancias de pasión, perjuicio, error manifiesto o parcialidad. *Id.* Es decir, en supuestos de abuso de discreción.

En el caso bajo análisis, quedó establecido que la tenencia de cincuenta y ocho (58) perros y treinta (30) gatos constituye un estorbo público que afecta particularmente a los demandantes-peticionarios. Según la prueba que obra en autos, los ladridos de los perros impiden a los esposos Flores-Jiménez, disfrutar del patio y del balcón de su casa e interfieren con sus horas de descanso. Asimismo, los malos olores ocasionados por los animales perturban el disfrute de su propiedad. Estamos

por tanto, ante un reclamo de daños morales derivados de un menoscabo al disfrute de su propiedad.

A la luz de la prueba presentada sobre los daños sufridos, entendemos que el tribunal abusó de su discreción al conceder una partida de daños a todas luces en extremo excesiva. No hay duda que los esposos Flores-Jiménez han sufrido daños a raíz del hecho que la señora Colberg mantiene una cantidad irrazonable de perros y gatos en su hogar. Sin embargo, la cantidad de $5,000.00 otorgada a cada demandante, no guarda armonía con los hechos del caso. Adviértase que los daños probados por los demandantes-peticionarios se contraen a la pérdida del disfrute de su propiedad por ruidos y malos olores, la cual visitan pocas veces al año. Procede entonces reducir la indemnización a $500.00 por cada demandante.

Para culminar, entendemos que la señora Colberg no actuó con temeridad en el trámite del presente pleito, por lo que no procedía la imposición de $2,500.00 por concepto de honorarios de abogado.

Por mandato de la Regla 44.1(d) de Procedimiento Civil, 32 L.P.R.A. Ap. III, el tribunal goza de la facultad de imponer honorarios de abogados a la parte que haya procedido con temeridad o frivolidad. Sobre las bases de esta disposición estatutaria, hemos indicado que un litigante actúa con temeridad cuando con "terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte,

innecesariamente a asumir las molestias, gastos, trabajo e inconvenientes de un pleito". *Rivera v. Tiendas Pitusa,* 148 D.P.R. 695, 7012 (1999). *Véase además Domínguez v. G.A. Life,* 157 D.P.R. 690, 706 (2002). Además, la determinación de temeridad es de índole discrecional, por lo que sólo debemos intervenir con ella cuando nos enfrentemos a un caso de abuso de discreción. *Colón Santos v. Cooperativa,* 2008 TSPR 32, res. 25 de febrero de 2008, 173 D.P.R.\_\_; *Puerto Rico Oil v. Dayco* 2005 TSPR 41, res. 6 de abril de 2005, 163 D.P.R.\_\_.

Los hechos del presente caso demuestran que la señora Colberg ejerció su derecho a presentar prueba sobre la inexistencia del estorbo y sobre las medidas que ha tomado para evitar las perturbaciones de las cuales se quejan los peticionarios. Además, presentó alternativas para resolver la situación. Por tanto, no encontramos que las defensas presentadas por la demandada fueran infundadas o injustificadas, o que la señora Colberg se defendiera de forma obstinada. Tampoco encontramos indicios de que ella desplegara una conducta temeraria que obligara a los demandantes a perseguir un pleito innecesario. Procede entonces, eliminar la partida de honorarios de abogados.

Por los fundamentos antes expuestos, revocamos la sentencia del Tribunal de Apelaciones que ordenó a las partes agotar remedios administrativos y modificamos, a su vez, la sentencia del Tribunal de Primera Instancia en la medida en que ordenó la remoción de todos los animales que

la parte demandada-recurrida mantiene en su propiedad. Se devuelve el caso al Tribunal de Primera Instancia para que evalúe qué cantidad de animales es razonable mantener en el lugar en el que vive la señora Colberg; examine la alternativa de construir un muro a prueba de sonido para remover el estorbo causado por los ladridos de los perros; y explore la posibilidad de imponer medidas tendentes a garantizar que la señora Colberg mantenga su hogar en condiciones limpias y encierre a sus perros durante ciertas horas de la noche y de la mañana. Finalmente, se modifica la cuantía de daños a $500.00 por cada demandante y se elimina la partida de honorarios de abogado.

Se dictará sentencia de conformidad.


Anabelle Rodrígez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan Flores Berger, Miriam
Jiménez Román y la Sociedad
Legal de Gananciales por ambos
compuesta

    Peticionarios

        v.

Lillybeth Colberg y otros

    Recurridos

                    CC-2006-940

## SENTENCIA

San Juan, Puerto Rico, a 20 de mayo de 2008

Por los fundamentos expresados en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, se revoca la sentencia del Tribunal de Apelaciones. Se devuelve el caso al Tribunal de Primera Instancia para que proceda conforme se dispone en la Opinión emitida. Se modifica la cuantía de daños concedidos por el foro primario a $500.00 por cada demandante y se elimina la partida de honorarios de abogado.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López emite una opinión disidente a la cual se le une el Juez Presidente señor Hernández Denton.

                  Aida Ileana Oquendo Graulau
                Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan Flores Berger, Miriam
Jiménez Román y la Sociedad
Legal de Gananciales por
ambos compuesta

    Peticionarios                 CC-2006-940
    *CERTIORARI*

       vs.

Lillybeth Colberg y otros

    Recurridos


OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ A LA CUAL SE UNE EL JUEZ PRESIDENTE, SEÑOR HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 20 de mayo de 2008

Estamos de acuerdo, y suscribimos la determinación central a la que se llega en la Opinión mayoritaria a los efectos de que "…los animales de la [demandada recurrida], señora Colberg —los 58 perros y 30 gatos— causan ruidos y malos olores que afectan a los peticionarios en el disfrute de su hogar, y que representan un estorbo público". (Énfasis suplido.)

Realmente, no puede ser de otra manera. Resulta, cuando menos, extremadamente difícil imaginar que una cantidad tan excesiva de

animales en un vecindario de nuestro País no se convierta en un estorbo público, afectando seriamente la tranquilidad y la salud de los vecinos. Ello, sencillamente, no se puede permitir.

Aquí no se trata del afecto que una persona en particular pueda sentir por los animales y de la necesidad que dicha persona pueda tener de su compañía, lo cual no sólo es loable sino que debe ser fomentando en muchas ocasiones. Eso no se cuestiona. La presente situación, sin embargo, trasciende los linderos de la razonabilidad.

I

Disentimos por razón de que entendemos que la parte dispositiva de la Opinión y Sentencia, emitidas por la mayoría de los integrantes del Tribunal en el presente caso, no sólo es errónea sino que es inmanejable, creándose una situación que nunca tendrá fin. Veamos.

Nos dice la Mayoría, en primer término, que la tenencia de 58 perros y 30 gatos, de parte de la señora Colberg, es "irrazonable", por lo que concluye que dicha situación no puede subsistir. A renglón seguido, sin embargo, nos dice que "no procede ordenar la remoción de todos los animales". Por último, nos informa la Mayoría que debe proveerse un remedio que le permita a la Sra. Colberg mantener un "número razonable de animales" que no constituya un estorbo público.

Ahí el problema. Nos preguntamos --lo que tendrá que, igualmente, cuestionarse el juez de instancia-- cuál es ese "número razonable" de animales de que habla de Mayoría: ¿50 perros y 25 gatos?; ¿45 perros y 20 gatos?; ¿40 perros y 17 gatos?; ¿35 perros y 15 gatos?; ¿30 perros y 12 gatos?; ¿25 perros y 10 gatos?; ¿20 perros y 7 gatos?; ¿15 perros y 5 gatos?, etc.

Pero, hay más. Procede que nos preguntemos: ¿cómo se va a llegar a esa determinación? Asumimos que la Mayoría entiende que deberá fijarse, e irse reduciendo poco a poco, el número de perros y gatos; además, tendrá que fijarse un periodo de tiempo durante el cual ese número de perros y gatos, en específico, permanecerán viviendo en la casa de la señora Colberg, con el propósito de que, luego, el tribunal de instancia celebre una vista, en la cual escuche, nuevamente, el testimonio de los vecinos y los peritos, para tratar de determinar, nuevamente, si la situación, con ese número particular de perros y gatos, continúa siendo un estorbo público o, por el contrario, ya no lo es. Y así sucesivamente, nos imaginamos, que se seguirán celebrando vistas *ad infinitum* con las distintas cantidades de perros y gatos.

Dicho de otra forma, este es uno de esos casos que tendrán "vida eterna" ante nuestros tribunales y en el cual las partes tendrán que gastar grandes sumas de dinero en honorarios de abogado tratando de determinar cuál es el

<u>"número de razonable" de perros y gatos según ordene el Tribunal</u>.

¿Hay que expresar algo más? Nos parece que la conclusión, a los efectos de que el curso dispositivo del caso es uno erróneo e inmanejable, es una "que se cae de la mata por sí sola"?

Es por ello que disentimos.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado